CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 16 2017
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

UNITED STATES OF AMERICA,    )
                             )
                             ) Case No. 7:16-cr-30026
                             )
v.                           )
                             )
MICHAEL JONES, et al.,       )
                             ) By: Michael F. Urbanski
    Defendants.              )     Chief United States District Judge

## MEMORANDUM OPINION

This matter comes before the court on a motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29. At the close of the government's evidence at trial, defendants Michael Dove and Terrance Brown moved the court for acquittal of Counts Three through Eight of the indictment on the basis of improper venue. ECF Nos. 849, 852.[1] For the reasons set forth below, the court will **GRANT** Dove's and Brown's motions and dismiss Counts Three through Eight **WITHOUT PREJUDICE** for improper venue.

I.

This case involves alleged gang activity by members and associates of the Mad Stone Bloods ("MSB"). Count One of the indictment charges four defendants with conspiracy to

---

[1] In his motion for judgment of acquittal, Brown also moves for a judgment of acquittal for venue on Counts One and Two. Racketeering offenses under 18 U.S.C. § 1962 and drug conspiracy offenses under 21 U.S.C. § 846 are continuing offenses. See United States v. Umaña, No 3:08CR134-RJC, 2009 WL 1443395, at *5 (W.D.N.C. May 20, 2009), aff'd, 750 F.3d 320 (2014). As such, "an overt act within the district is sufficient for venue." United States v. Goldman, 750 F.2d 1221, 1226 (4th Cir. 1984); see also United States v. Giovanelli, 747 F. Supp. 875, 884 (S.D.N.Y. 1985) (finding that with RICO charges, "venue may be properly laid in the district in which the conspiratorial agreement was formed or in any district in which an overt act in furtherance of the conspiracy was committed by any of the conspirators" (emphasis added)). The government introduced sufficient evidence of acts in the Western District of Virginia in furtherance of the alleged RICO and drug conspiracies to send those counts to the jury. Accordingly, Brown's motion for acquittal concerning venue as to Counts One and Two is **DENIED**.

violate the Racketeer Influenced and Corrupt Organizations Act (RICO) in violation of 18 U.S.C. § 1962(d). Count Two charges the same four defendants with drug conspiracy in violation of 21 U.S.C. § 846. Dove and Brown, in addition to facing the RICO and drug conspiracy counts, are charged with violent crime and firearm offenses in Counts Three through Eight. Specifically, Brown and Dove are both named in Counts Three and Six, which charge assault in aid of racketeering in violation of 18 U.S.C. § 1959(a)(3) ("VICAR"). Counts Four and Seven charge Dove with use of a firearm during a crime of violence under 18 U.S.C. § 924(c), and Counts Five and Eight charge Brown with § 924(c) violations.

Venue for Counts Three through Eight was the subject of significant pretrial litigation. On June 20, 2017, the court denied motions to dismiss those counts for improper venue. See United States v. Jones, 7:16-cv-30026, 2017 WL 2670759 (W.D. Va. June 20, 2017). That decision, however, was based solely on the facts alleged by the government pretrial. See United States v. Engle, 676 F.3d 405, 412 (4th Cir. 2012).

Now that the government has presented its case, the procedural posture requires the court to consider all of the venue-related evidence presented by the government. Dove and Brown argue that the government has failed to establish venue in the Western District of Virginia on Counts Three through Eight, which violates their right to be tried where the crimes were committed. See U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; Fed. R. Crim. P. 18.[2] The crimes alleged in Counts Three through Eight concern a robbery outside

---

[2] Although the motions for judgments of acquittal challenge venue for Counts Three through Eight, the primary focus in resolving these motions is whether venue is proper for Counts Three and Six, which are the § 1959(a) charges. If venue is proper for the § 1959(a) charges, then venue will also be proper for the § 924(c) charges in Counts Four, Five, Seven, and Eight. See United States v. Umaña, 750 F.3d 320, 336 (4th Cir. 2014) ("Venue for § 924(c) prosecutions is appropriate wherever the underlying crime of violence took place."). As noted, the crime of violence underlying the § 924(c) charges in Counts Four and Five is the § 1959(a) charge in Count Three; likewise, the crime of violence

2

of the Ink Junkeez tattoo parlor in Norfolk on July 26, 2013 and the shooting of O.J. on the streets of Norfolk during the course of an attempted robbery on August 1, 2013. As a result, Brown and Dove claim that the conduct giving rise to those charges occurred entirely in Norfolk, which is located in the Eastern District of Virginia. 28 U.S.C. § 127(a).

The government argues that the issue of venue for Counts Three through Eight should be submitted to the jury because the government's evidence is sufficient to demonstrate that "Brown and Dove committed the two violent crimes at issue with the purpose of maintaining or increasing their position in the gang, and the MSB leaders . . . who had authority over Dove and Brown and resided and operated in the Western District of Virginia." United States' Resp. Proof Venue, ECF No. 850, at 2.

The parties' disagreement centers on the sufficiency of the government's evidence adduced in its case in chief. As explained below, a review of the government's evidence dictates that the government has failed to establish that venue properly lies in the Western District of Virginia for Counts Three through Eight.

## II.

Rule 29 requires the court to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). While the jury remains the primary factfinder, "the trial judge still resolves elements of the offense in granting a Rule 29 motion in the absence of a jury verdict." Smith v. Massachusetts, 543 U.S. 462, 468 (2005). As such, Rule 29 allows "a substantive determination" by the court "that the prosecution has failed to carry its [factual] burden." Id.

---

underlying Counts Seven and Eight is the § 1959(a) charge in Count Six. Therefore, if venue is proper for the § 1959(a) charges in this case, the court must deny Dove's and Brown's motions to dismiss the § 1959(a) charges as well as the § 924(c) charges in Counts Four, Five, Seven, and Eight of the indictment.

3

Proper venue is a question of fact, and the government bears the burden of proof of establishing venue. United States v. Engle, 676 F.3d 405, 412 (4th Cir. 2012). Unlike other factual elements, venue "may be proven by mere preponderance of the evidence." Id. Circumstantial evidence may be sufficient to establish proper venue. Id. (citing United States v. Griley, 814 F.2d 967, 973 (4th Cir. 1987)). Because of its factual nature, venue is ordinarily the province of the jury. Id. Like all other factual determinations at trial, however, venue is the proper subject of a Rule 29 motion. See United States v. Collins, 372 F.3d 629, 633 (4th Cir. 2004) ("[I]f an indictment properly alleges venue, but the proof at trial fails to support the venue allegation, an objection to venue can be raised at the close of evidence.").

Under the applicable burden of proof for venue, a court must deny a Rule 29 motion challenging venue if, when viewing the evidence in the light most favorable to the government, a rational trier of fact could conclude that a preponderance of the evidence supports venue in the district in which the charges are brought. See Engle, 676 F.3d at 412 (venue standard); United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997) (Rule 29 standard). Put another way, if the prosecution has not established a prima facie case for venue by its own evidence, the court should grant the Rule 29 motion. See United States v. Hinderman, 625 F.2d 994, 996 (10th Cir. 1980) (per curiam) ("Rule 29(a), as it concerns a motion for acquittal at the close of the prosecution's case, implements the 'requirement that the prosecution must establish a prima facie case by its own evidence before the defendant may be put to his defense.'" (quoting Cephus v. United States, 324 F.2d 893, 895 (D.C. Cir. 1963))); cf. United States v. Gugnani, 178 F. Supp. 2d 538, 542 (D. Md. 2002) ("When the Court denied the Rule 29 Motion, the Court believed that by construing the evidence in the

4

light most favorable to the Government, a prima facie case as to all the defendants had been established."). If, however, "'there is a genuine issue of material fact with regard to proper venue,'" the court "must instruct the jury" to resolve that issue. Engle, 676 F.3d at 413 (quoting United States v. Perez, 280 F.3d 318, 334 (3rd Cir. 2002)).

## A.

As the court previously detailed, see United States v. Jones, 7:16-cv-30026, 2017 WL 2670759, at *3 (W.D. Va. June 20, 2017), Article III of the Constitution mandates that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. The Sixth Amendment further requires that criminal defendants be tried "by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. Federal Rule of Criminal Procedure 18 implements these constitutional venue rights: "[T]he government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18.

"The federal venue requirement protects criminal defendants from the inconvenience and prejudice of prosecution in a far-flung district bearing no connection to their offenses." Engle, 676 F.3d at 412 (citation and quotation omitted); see also United States v. Cabrales, 524 U.S. 1, 9 (1998) ("[T]he venue requirement is principally a protection for the defendant."). These constitutional provisions also "promote thorough factfinding" and are "best served by holding trial where '[t]he witnesses and relevant circumstances surrounding the contested issues' are located." United States v. Clines, 958 F.2d 578, 583–84 (4th Cir. 1992) (alteration in original) (quoting Travis v. United States, 364 U.S. 631, 640 (1961)).

5

"While the venue rule—trial in the district where the crime is committed—seems straightforward, the place of the crime can be difficult to determine." United States v. Bowens, 224 F.3d 302, 308 (4th Cir. 2000). Absent an express direction from Congress otherwise, "the site of a charged offense must be determined from the nature of the crime alleged and the location of the act or acts constituting it." Cabrales, 524 U.S. at 5 (citations and quotations omitted). "In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999). In the Fourth Circuit, "the conduct constituting the offense is limited to essential conduct elements" of the offense. Bowens, 224 F.3d at 312. Elements that are not conduct elements are "circumstance elements," which, "even if essential, are of no moment to a venue determination." United States v. Oceanpro Indus., Ltd., 674 F.3d 323, 328 (4th Cir. 2012) (citations and quotations omitted).

## B.

In United States v. Umaña, the Fourth Circuit examined proper venue for § 1959(a) offenses and held that venue properly lies not only where the violent crime was committed but also where the defendant conducted an act showing that the purpose of the crime was to further his position in a RICO enterprise.[3] 750 F.3d 320, 333–36 (4th Cir. 2014). Much like Dove and Brown, Umaña was charged with a RICO offense under § 1962, two counts of violent crimes in aid of racketeering under § 1959(a), and corresponding firearms offenses under § 924(c). He was tried and convicted in Charlotte for the violent crimes he committed

---

[3] In its previous opinion regarding venue, the court laid out the relevant facts of Umaña in detail, and will not repeat them here. See Jones, 2017 WL 2670759, at *3.

6

in Greensboro.[4] On appeal, he argued that venue was improper for the § 1959(a) offenses in Charlotte because his violent crimes took place in a district different than where he faced trial.

In accordance with the framework governing venue outlined above, the Fourth Circuit addressed Umaña's arguments by first identifying the elements of a § 1959(a) offense:

> (1) that there was an enterprise engaged in racketeering activity;
> (2) that the enterprise's activities affected interstate commerce;
> (3) that the defendant committed [a violent crime]; and
> (4) that the defendant, in committing [the violent crime], acted in response to payment or a promise of payment by the enterprise or "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise."

Id. at 334–35.[5] Umaña argued that the only conduct element of a § 1959(a) offense is the commission of the violent crime.

The Fourth Circuit disagreed. In rejecting Umaña's position, the Court held that not only the third element, the commission of the violent crime, but also the fourth element— "for the purpose of . . . maintaining or increasing position in an enterprise," or the "purpose" element—is a conduct element of a § 1959(a) offense. The Court reasoned that "a physical manifestation of purpose is necessary to ensure that the act is actually carried out to further the enterprise's goals" and that the purpose element "requires a manifest quid pro quo between the member and the gang." Id. at 335. "At bottom, we hold that § 1959(a)(1) includes as an element an objective, physical act that links the defendant with the enterprise

---

[4] Charlotte is in the Western District of North Carolina, and Greensboro is in the Middle District of North Carolina.
[5] Umaña was charged under § 1959(a)(1) for murder in aid of racketeering. Dove and Brown are charged under § 1959(a)(3) for assault in aid of racketeering.

7

with respect to the underlying violent crime and that this element is a conduct element supporting venue." Id.

Having determined that the purpose element of a § 1959(a) offense requires an objective, physical act, the Fourth Circuit had little trouble identifying Umaña's actions in Charlotte that showed his purpose in committing the crimes. Most notably, Umaña travelled back to Charlotte immediately after the murders and boasted to his fellow gang members about his crimes, demonstrating that he committed the murders for the purpose of furthering his position in the gang. Id. at 335–36. In light of the defendant's "objective, physical act" in the Western District of North Carolina related to the murders in Greensboro, the Umaña court held venue for the § 1959(a) offenses and the corresponding § 924(c) offenses was proper in that district.

## C.

The Fourth Circuit has noted that the "inquiry into the place of the crime may yield more than one appropriate venue, or even a venue in which the defendant has never set foot." Bowens, 224 F.3d at 309 (citing 18 U.S.C. § 3237(a), the continuing offense venue statute); cf. United States v. Johnson, 323 U.S. 273, 275 (1944) ("By utilizing the doctrine of a continuing offense, Congress may, to be sure, provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates."). The continuing offense doctrine applies most broadly where "Congress defines the essential conduct elements of a crime in terms of their particular effects." Bowens, 224 F.3d at 313. In such a case, "venue will be proper where those proscribed effects are felt." Id.

8

In Bowens, the Fourth Circuit examined whether harboring a fugitive in violation of 18 U.S.C. § 1071 triggers such an effects test. Bowens was convicted in the Eastern District of Virginia, where the government had issued arrest warrants for the fugitives whom he concealed. Bowens argued on appeal that venue was improper because he never travelled into Virginia's Eastern District while harboring the fugitives. The government argued in response that venue for a § 1071 prosecution should be proper in the district where the arrest warrant was issued, that is, where the effects of the criminal conduct were felt. The Fourth Circuit identified the only conduct element of a § 1071 offense as the act of "harboring or concealing a person," and declined to apply the effects test because the element "is defined in the statute without reference to its effects." Id. at 313–14. Therefore, venue in the Eastern District of Virginia was improper for Bowen's § 1071 offenses.

By contrast, the Fourth Circuit held in United States v. Oceanpro Industries, Ltd., 674 F.3d 323 (4th Cir. 2012), that the effects test does apply to the crime of giving false statements to federal law enforcement in violation of 18 U.S.C. § 1001. In Oceanpro, an employee of a seafood wholesaler located in Washington, D.C. made false statements to federal investigators in relation to a Maryland-based investigation. Despite having made the statements in Washington, the employee was tried in Maryland. The Fourth Circuit held that venue was proper in Maryland because "the essential conduct constituting the [§ 1001] offense inherently references the effects of that conduct." Oceanpro, 674 F.3d at 329. The Court observed that Congress "defined the effects in § 1001 to include the element of materiality. And in this case, proving materiality necessarily requires evidence of the existence of the federal investigation in Maryland and the potential effects of [the

9

employee's] statement on that investigation." Id. Unlike the harboring element at issue in Bowens, the materiality prong a § 1001 offense indicates that the crime "continu[es] into the district in which the effects of the false statement are felt." Id. at 330 (quoting United States v. Salinas, 373 F.3d 161, 167 (1st Cir.2004)).

In short, Umaña identified the purpose element of a § 1959(a) offense as a conduct element, but did not have to decide whether a defendant's physical act satisfying the purpose element must have occurred in the judicial district in which the defendant is tried. Oceanpro and Bowens teach that a defendant's presence in a district is not required if the statute at issue defines a conduct element in terms of its effects and those effects were felt in the district where the proceedings take place. If § 1959(a) triggers the effects test outlined in Oceanpro and Bowens, and the government has propounded a prima facie case that the effects of the actions satisfying a § 1959(a) conduct element were felt in the Western District of Virginia, then the court cannot grant a Rule 29 motion acquitting Brown and Dove on Counts Three through Eight for improper venue.

In applying the forgoing principles to this case, it appears that the purpose element of a § 1959(a) offense "inherently references the effects of that conduct." Oceanpro, 674 F.3d at 329. The purpose element defines the effects of a § 1959(a) offense to include influencing the decisions of gang leaders with authority over membership and promotions. Thus, proving the § 1959(a) offenses in this case necessarily requires evidence of the effects of Dove and Brown's conduct on the decisions of MSB leaders who grant membership to and promotions within the gang. See Oceanpro, 674 F.3d at 329 (proving material false

statement "necessarily requires evidence of the existence of the federal investigation in Maryland and the potential effects of [the employee's] statement on that investigation").

In order to submit Counts Three Throught Eight to the jury, the government was required to present evidence that Dove and Brown engaged in objective, physical acts showing that they committed the Ink Junkeez robbery and the O.J. shooting "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise," and those the effect of those objective, physical acts were felt in the Western District of Virginia. 18 U.S.C. § 1959(a); Umaña, 750 F.3d at 335.

### III.

While the defendant in Umaña engaged in gang activity in the district where the trial was held directly related to the violent crimes committed elsewhere, no similar evidence was presented in this case. First, there was no evidence that anyone, including Dove and Brown, engaged in any conduct in the Western District of Virginia related to the Norfolk street crimes. Second, no evidence was presented that orders were given by gang leaders in the Western District of Virginia to Dove and Brown directing them to commit the violent crimes on the streets of Norfolk. Third, no evidence was presented that anyone, including Dove and Brown, communicated with gang leaders in the Western District of Virginia about the Norfolk street crimes.

The government argues that a patchwork of circumstantial evidence adduced at trial would allow a rational trier of fact to find, by a preponderance of the evidence, an objective, physical act directed toward the Western District of Virginia "for the purpose of gaining entrance to or maintaining or increasing position in" MSB. The government's circumstantial

evidence consists of the following facts: (1) MSB leaders were incarcerated in the Western District of Virginia and controlled its actions from there; (2) MSB members committed other crimes in the Western District of Virginia; (3) at the time of the alleged Ink Junkeez robbery and O.J. shooting, MSB leaders commanded Dove, Brown, and Adrienne Williams, a paid government informant and MSB member, to stay together; (4) Brown commented that he made Dove participate in the O.J. shooting; and (5) Brown received a call from Nicholas Johnson, an MSB member in the Western District of Virginia, shortly after the O.J. shooting. The court has considered the evidence in the light most favorable to the government and concludes that the evidence does not support a finding of an objective, physical act related to the charged violent crimes that either took place in the Western District of Virginia or the effects of which were felt in this district.

### A.

First, the government points to evidence that the two highest ranking members of MSB in Virginia, Hassan Hubbert and Larry Boone, were both incarcerated in state prisons in the Western District of Virginia at the time of the Ink Junkeez robbery and O.J. shooting.

While that is true, there was no evidence that Hubbert, Boone, or other gang leaders in the Western District of Virginia had any involvement in the robbery and shooting that occurred on the streets of Norfolk. No evidence was introduced to suggest that gang leaders in the Western District ordered these violent acts, approved of these violent acts, or were even informed of these violent acts.

Indeed, the government's principal witness, informant Adrienne Williams, testified that although she was the mouthpiece on the street of incarcerated MSB gang leader Larry

12

Boone, she did not tell Boone or other gang members about the Ink Junkeez robbery or the O.J. shooting. In short, in the absence of any evidence tying the Norfolk street crimes to gang leaders incarcerated in state prisons in the Western District of Virginia, the mere fact of their incarceration here does not provide a rational trier of fact with any basis to link the Norfolk street crimes to this district.

**B.**

Second, while evidence was presented that other gang members, such as James Bumbry and Nicholas Johnson, engaged in other crimes in the Western District of Virginia, such as selling drugs in Roanoke or broadcasting a hit into a state prison in this district, evidence of these wholly separate crimes does not constitute an objective, physical act linking the Norfolk street crimes to this district.

**C.**

The government presented evidence that MSB leaders in New York commanded that Dove, Brown, and Williams stay together at all times. The government claims that "[i]t was understood that if they were not together and they got caught by leadership, they would be violated." The government also claims that the jury could infer "that they would be involved in criminal activity together during this period of time." The government explains that Shawn Smith, a high-ranking MSB member based in New York, learned about Brown from Willie Borroughs, another high-ranking MSB member based in New York. Smith testified that Brown was somebody new in control on the streets of Virginia and that he "put work in," meaning that he committed acts of violence or got money for MSB. United States' Resp. Proof Venue, ECF No. 850, at 6 n.5.

Even in the light most favorable to the government, however, this evidence does not support venue for the Norfolk street crimes in this district. Throughout the government's argument on this point, one fact stands out: The command for Dove, Brown, and Williams to stay together and the information about Brown all came from New York, not the Western District of Virginia. Williams testified that the command to stay together originated with defendant Michael Jones, who was based in Brooklyn. The information Smith learned about Brown came from Borroughs, who was also located in New York. Even assuming that the command to stay together meant that Dove and Brown were to commit crimes, nothing about this command from New York implicates the Western District of Virginia.[6]

## D.

The government points to a statement made by Brown that he "probably made him [Dove]" participate in the shooting of O.J. Id. at 5. To support venue, the government suggests that since Brown outranked Dove at the time of the shooting, "Dove would have been required to follow Brown's instructions" or be subject to a violation for not following gang rules. Id.

Again, the problem with this evidence is that it provides no nexus to the Western District of Virginia. To be sure, Brown's statement suggests that he coerced Dove into participating in the O.J. shooting, but there is no evidence that Brown's command originated from or was otherwise tied to the Western District of Virginia. As such, Brown's statement does not demonstrate that anyone in this district compelled Dove's participation in the O.J. shooting in Norfolk.

---

[6] At oral argument, the government argued that punishment for violating this command would have come from gang leaders incarcerated in the Western District of Virginia. This argument is entirely speculative, as no such evidence was adduced at trial.

14

## E.

Finally, the government argues for venue here because Brown received a call from Nicholas Johnson, ostensibly located in the Western District, a short time after the O.J. shooting. See Gov't Ex. 210. During the phone call, Brown and Johnson discuss some MSB affairs, including getting an MSB member out on bond. Brown also mentions that he spoke with Hubbert recently. Williams, who was present in the car with Brown when he received the call, also commented that she needed "to speak with Boone."

The call between Brown and Johnson is more notable for what it does not discuss than what it does discuss. Not once did Brown discuss the O.J. shooting with Johnson, even though it occurred mere hours before the call. Not once did Brown discuss the Ink Junkeez robbery with Johnson, even thought it occurred six days before the call. Not once did Brown suggest to Johnson that Brown committed any acts of theft or violence to impress leaders of MSB incarcerated in the Western District of Virginia. Similarly, while Williams stated she needed to speak with Boone during the call, she testified that she never actually spoke with Boone about the Ink Junkeez robbery or the O.J. shooting.

Again, what is lacking from this evidence is any link between the Norfolk street crimes and the Western District of Virginia. Brown and Johnson did not discuss the O.J. shooting shortly after it occurred, and there was no evidence presented that Brown, Williams, or anyone else told gang leaders in the Western District of the Norfolk street crimes to boost Dove and Brown's position in the gang.

F.

Even when considered together, the government's patchwork of circumstantial evidence does not support venue in this district for the VICAR counts. The evidence is simply insufficient to establish any link between the Norfolk street crimes constituting the VICAR counts and the Western District of Virginia. While there is evidence of other crimes committed by other gang members in the Western District of Virginia, nothing links those crimes to the Norfolk street crimes charged in the VICAR counts. There is evidence that Virginia MSB gang members were incarcerated in the Western District of Virginia, but there is no evidence that those leaders authorized, condoned, or even knew about the street crimes in Norfolk. Most importantly, even considering all of the evidence together, no evidence suggested that Dove and Brown committed the Norfolk street crimes to impress gang leaders incarcerated in this district. Under this set of facts, no rational trier of fact could find an objective, physical act that took place in the Western District of Virginia, or the effects of any such act that were felt in this district, with respect to the street crimes in Norfolk charged as VICAR offenses.

IV.

While the Fourth Circuit has not spoken on whether a defendant can be retried when venue is lacking, other courts have "repeatedly held that a dismissal for lack of venue after jeopardy has attached does not bar re-prosecution of that offense." United States v. Hart-Williams, 967 F. Supp. 73, 76 (E.D.N.Y. 1997); see also United States v. Brunty, 701 F.2d 1375, 1380 n.12 (11th Cir. 1983) ("[I]f such a motion [i.e., a Rule 29 motion] were granted

16

solely due to improper venue, the government would not be prevented from retrying the case in a proper district."), cert. denied, 464 U.S. 848 (1983).

Although the grant of a Rule 29 motion on venue is couched in terms of "acquittal," venue "is a question of procedure, more than anything else, and it does not either prove or disprove the guilt of the accused." Wilkett v. United States, 655 F.2d 1007, 1011 (10th Cir. 1981); see also 6 Wayne R. LaFave et al., Criminal Procedure § 25.3(a) (3d ed. 2012) ("[A] trial court's ruling that the prosecution's case-in-chief failed to establish venue, though framed as a judgment of acquittal, does not preclude retrial because venue is an element 'more procedural than substantive' which does not go to culpability."). Because venue does not implicate the guilt or innocence of defendant, "the dismissal cannot be considered an acquittal and so is not shielded by the double jeopardy clause." United States v. Kaytso, 868 F.2d 1020, 1021 (9th Cir. 1988). With this in mind, the court grants the Rule 29 motions without prejudice, and the government may, in its discretion, reprosecute the VICAR charges in a district where venue is proper.

## V.

The government presented no direct evidence linking the Norfolk street crimes at issue in the VICAR counts with the Western District of Virginia. In the light most favorable to the government, the hints of circumstantial evidence as to venue, taken together, would not lead a rational trier of fact to conclude that venue for the VICAR counts existed in the Western District of Virginia. For this reason, Counts Three through Eight of the superseding indictment are **DISMISSED WITHOUT PREJUDICE.**

An appropriate Order will be entered.

Entered: 10-16-17

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge